# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., EUROFINS MWG OPERON INC., and THE MIDLAND CERTIFIED REAGENT COMPANY, INC.,**<br><br>**Defendants.** | **CIVIL ACTION NO. 2:09-CV-00283 TJW-CE** |

## DEFENDANTS BIOSEARCH TECHNOLOGIES, INC. AND EUROFINS MWG OPERON INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

## TABLE OF CONTENTS

Page

I. THE GRAVITY OF THIS SUIT IS IN THE NORTHERN DISTRICT OF CALIFORNIA .................................................................................................................. 2

    A. Plaintiffs Are Both In California—One Even In The Northern District Of California ........................................................................................................... 3

    B. Two of the Named Inventors of the Patents-in-Suit Reside in the Northern District of California or Live Close to California ....................................... 4

    C. Biosearch's Operations Are Centered In The Northern District of California ........................................................................................................... 4

    D. Eurofins Has No Connection To Texas ............................................................. 5

    E. Numerous Other Non-Party Witnesses And Third-Party Prior Art Are Located In Or Near the Northern District of California ......................................... 5

    F. The Newly-Added Defendants In Midland And Lewisville Are Makeweight ......................................................................................................... 7

        1. Midland Certified ..................................................................................... 7

        2. Bio-Synthesis ........................................................................................... 7

II. CONVENIENCE, RELEVANCE, AND FAIRNESS DICTATE THAT THIS SUIT BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA .................................................................................................................. 8

    A. Suit Could Have Been Brought In The Northern District of California ............... 10

    B. The Private Factors Weigh In Favor Of Transfer ................................................ 10

        1. Relative ease of access to sources of proof ............................................. 11

        2. The availability of compulsory process to secure the attendance of witnesses ................................................................................................. 11

        3. The cost of attendance for willing witnesses .......................................... 12

        4. Other practical problems that make trial of a case easy, expeditious, and inexpensive ................................................................. 13

    C. The Public Factors Weigh In Favor Of Transfer ................................................ 13

        1. The local interest in having localized interests decided at home ............. 13

        2. The administrative difficulties flowing from court congestion ............... 14

        3. The familiarity of the forum with the law that will govern the case ........ 15

        4. The avoidance of unnecessary problems of conflict of laws or in the application of foreign law ................................................................. 15

III. ALL NON-NEUTRAL FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Balthaser Online, Inc. v. Network Solutions, LLC*,
   No. 08-430, 2009 WL 2952230 (E.D. Tex. Sept. 15, 2009) .................................................. 1, 2

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ...................................................................................... 8, 9, 11

*In re Hoffmann-La Roche, Inc.*,
   No. 911, 2009 WL 4281965 (Fed. Cir. Dec. 2, 2009) ......................................................... 1, 8, 9

*In re Nintendo*,
   No. 914, 2009 WL 4842589 (Fed. Cir. Dec. 17, 2009) ........................................................ 8, 9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................................... 1, 8, 13, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304, 315 (5th Cir. 2008) ......................................................................... 8, 10, 11, 12

**Statutes**

28 U.S.C. § 1391 ............................................................................................................................. 9

28 U.S.C. § 1391(c) ...................................................................................................................... 10

28 U.S.C. § 1400(b) ...................................................................................................................... 10

28 U.S.C. § 1404(a) ................................................................................................................ passim

**Other Authorities**

Fed. R. Civ. P. 45(b)(2) ................................................................................................................. 11

Defendant Biosearch Technologies, Inc. ("Biosearch"), whose relevant business operations are in the Northern District of California, and Defendant Eurofins MWG Operon Inc. ("Eurofins"), which has no connection to Texas, respectfully move the Court pursuant to 28 U.S.C. § 1404(a) for an order transferring the patent infringement action brought by two California-based Plaintiffs, one of which operates primarily in the Northern District of California.

Plaintiffs, in direct contravention of Federal Circuit precedent, have attempted to manipulate venue. In their initial filing, Plaintiffs, whose primary residence is in the Northern District of California, sued Biosearch Technologies, Inc., whose primary residence is also in the Northern District of California. When Biosearch demanded that the case be transferred to the Northern District, as that is where all of the parties, documents and significant third party witnesses reside, Plaintiffs amended their complaint to add additional non-California parties, none of whom are located in the Eastern District of Texas. Plaintiffs' artifice to keep venue in the Eastern District of Texas has been repeatedly rejected by the Federal Circuit and this case must be transferred to the Northern District of California. *See In re Hoffmann-La Roche, Inc.*, No. 911, 2009 WL 4281965, at *3 (Fed. Cir. Dec. 2, 2009) ("A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities.").

Applying this principle, Judge Folsom recently disregarded a group of Texas-based defendants who were added shortly after the Federal Circuit decided *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), and granted the motion brought by 12 California-based defendants to transfer to the Northern District of California. *See Balthaser Online, Inc. v. Network Solutions, LLC*, No. 08-430, 2009 WL 2952230, at *5 (E.D. Tex. Sept. 15, 2009)

(refusing to consider witnesses and source of proof associated with the defendants added after lawsuit was filed).  Indeed, if such tactics are permitted to manipulate venue, businesses throughout Texas and particularly in the Eastern District of Texas, no matter how small, could become regular targets of patent infringement suits.

Accordingly, Biosearch and Eurofins respectfully request that this Court grant the requested motion to transfer, at least as to Biosearch and Eurofins.  Because suit may have been brought against Biosearch and Eurofins in the Northern District of California, the claims against any objecting defendants may be severed and transferred while other claims are retained in the Eastern District of Texas.  *See, e.g., Balthaser,* 2009 WL 2952230, at *5 (permitting transfer of California-based defendants while retaining jurisdiction over Texas-based defendants who were added for purpose of maintaining venue and it was clear they were not so involved in the controversy).

## I. THE GRAVITY OF THIS SUIT IS IN THE NORTHERN DISTRICT OF CALIFORNIA

On September 18, 2009, California-based Plaintiffs filed the Complaint against Biosearch (the only named defendant) alleging infringement of five U.S. patents by making, using, importing, selling and/or offering to sell dual labeled probes incorporating a quencher and fluorophore reporter covalently linked to the 3' or 5' ends of an oligonucleotide, which are used to monitor DNA amplification in real-time (the "Accused Products").  Complaint ¶¶ 17, 23, 29, 35, 41.  Biosearch informed Plaintiffs that it believed venue was not proper in the Eastern District of Texas and that, unless Plaintiffs agreed, it would file a motion to transfer the matter to the Northern District of California.  *See* Declaration of Ahren C. Hoffman in Support of Biosearch's Motion to Transfer ("Hoffman Decl.") Ex. 1.  Shortly thereafter, Plaintiffs filed the First Amended Complaint ("FAC") (Docket #10) naming three new defendants: (1) Bio-

Synthesis, Inc. ("Bio-Synthesis"), allegedly a Texas corporation with a principal place of business in Lewisville, Texas; (2) The Midland Certified Reagent Corporation, Inc. ("Midland Certified"), allegedly a Texas corporation with a principal place of business in Midland, Texas; and (3) Eurofins, a Delaware corporation with its principal place of business in Huntsville, Alabama. FAC §§ 16-27.

### A. Plaintiffs Are Both In California—One Even In The Northern District Of California

Plaintiffs do not appear to have any connection to the Eastern District of Texas, but they do have significant ties to California including the Northern District of California. Applied Biosystems is a limited liability Delaware corporation having its principal place of business in Foster City, California, within the Northern District of California. FAC ¶ 5. Life Technologies is a Delaware corporation having its principal place of business in Carlsbad, California, just north of San Diego. FAC ¶ 4. As such, most of the documentary evidence related to this action in Plaintiffs' possession will be in California, if not solely within the Northern District of California.

Moreover, given the base of Plaintiffs' operations in California, most if not all of the current and former employees of Plaintiffs are located in California. For example, at least the following former employees in California have highly relevant information:

- **Alex Andrus** – Former Applied Biosystems executive involved with prior litigation with Biosearch and attempts to license some of the patents-in-suit to Biosearch, currently known to reside in the San Francisco Bay Area. *See* Declaration of Ron Cook in Support of Motion to Transfer ("Cook Decl.") ¶ 10; Hoffman Decl. Ex. 33.

- **Mike Hunkapiller** – Former president of Applied Biosystems, knowledgeable of ongoing dispute against Biosearch, currently known to reside in Palo Alto, CA. *See* Cook Decl. ¶ 11; Hoffman Decl. Ex. 34.

- **Paul D. Grossman** – Former attorney for Applied Biosystems, knowledgeable of ongoing dispute against Biosearch, currently known to reside in Carlsbad, CA. *See* Cook Decl. ¶ 12; Hoffman Decl. Ex. 12.

- **Gregory Ewing** — Former Applied Biosystems scientist knowledgeable of ongoing dispute against Biosearch, currently known to reside in Sunnyvale, CA. *See* Cook Decl. ¶ 13; Hoffman Decl. Ex. 35.
- **Ronald Graham** — Former Applied Biosystems scientist knowledgeable of ongoing dispute against Biosearch, currently known to reside in San Ramon, CA. *See* Cook Decl. ¶ 14; Hoffman Decl. Ex. 35.
- **Eric Mayrand** — Former Applied Biosystems scientist familiar with prior art relevant to patents-in-suit, currently known to reside in Pacifica, CA. *See* Cook Decl. ¶ 15; Hoffman Decl. Ex. 36.

None of Plaintiffs' employees are known to reside in the Eastern District of Texas.

### B. Two Of The Named Inventors Of The Patents-in-Suit Reside In The Northern District Of California Or Live Close To California

The patents-in-suit identify a total of four inventors. Two of the four inventors currently reside in the Northern District of California: Kenneth J. Livak and Khairuzzaman Bashar Mullah. *See* Hoffman Decl. Exs. 2-3. The other inventors, Jeffrey Marmaro and Susan Flood, are believed to live in Colorado and North Carolina, respectively. *See* Hoffman Decl. Exs. 4 & 37.

### C. Biosearch's Operations Are Centered In The Northern District of California

Defendant Biosearch is a California corporation with its principal place of business in Novato, California, within the Northern District of California, where it maintains corporate documents and employs the personnel relevant to this action. Cook Decl. ¶ 3. Biosearch has no connection to the Eastern District of Texas. *See* Cook Decl. ¶ 4. Biosearch has no direct marketing business, and does not employ any sales representatives, within the State of Texas. *Id.* To the extent that any Accused Products are sold within the Eastern District of Texas, sales for these customers amounted to less than one percent (1%) of Biosearch's revenue in 2008. *Id.*

The servers, technical infrastructure and manufacturing facility associated with the Accused Products are located in Novato, California, within the Northern District of California. Cook Decl. ¶ 5. All of Biosearch's documents relating to the Accused Products are located in Novato, California, within the Northern District of California. *Id*. All of Biosearch's

electronically stored information relating to the manufacture, use and/or sale of the Accused Products is located in Novato, California, within the Northern District of California.  *Id.*  None of the equipment, documents, or electronically stored information relevant to the claims and defenses in this lawsuit is located in the Eastern District of Texas.  Cook Decl. ¶ 6.

All foreseeable Biosearch witnesses with information about the Accused Products and the claims and defenses in this lawsuit reside in the Northern District of California.  Cook Decl. ¶ 7.

Biosearch has approximately 90 permanent employees, all of which reside in the San Francisco Bay Area.  *Id.*.  In addition, a *former* Biosearch employee, Harrison Ransom, has knowledge regarding marketing of the Accused Products and appears to reside close to the Northern District of California.  *Id. at ¶* 8; Hoffman Decl. Ex. 30.

### D. Eurofins Has No Connection To Texas

Eurofins is a Delaware corporation with its principal place of business in Huntsville, Alabama.  Declaration of Klaus Kuegler in Support of Motion to Transfer ("Kuegler Decl.") ¶ 4. Eurofins has no offices, operations, employees, sales representatives or documents in Texas, and is unaware of any non-party witnesses located in Texas that it would need to call.  *Id.* ¶¶ 4-6, 8. Eurofins is the successor to a business that was founded in Northern California and operated there for many years.  *Id.* ¶ 12.  As a result, there are a number of witnesses in Northern California with knowledge about the development and properties of the accused products, the prior art to the patents-in-suit, and the manufacture and sale of dual-labeled probes without any license or suit from Plaintiffs.  *Id.* ¶¶ 13-17.

### E. Numerous Other Non-Party Witnesses And Third-Party Prior Art Are Located In Or Near the Northern District of California

The following *non-party* witnesses are located in the Northern District of California and have material and relevant information relating to this suit:

- **Stephen C. Macevicz** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Cupertino, CA. *See* Hoffman Decl. Exs. 6 & 14.

- **Vincent M. Powers** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Burlingame, CA. *See id.* Ex. 7, FAC Ex. E.

- **Paul Davis** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Menlo Park, CA. *See* Hoffman Decl. Exs. 8 & 14.

- **Mark A. Haynes** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Half Moon Bay, CA. *See id.* Exs. 9 & 14.

- **Kent R. Richardson** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Mountain View, CA. *See id.* Exs. 10 & 14.

- **Stephen G. Will** – Inventor on prior art reference submitted during prosecution of the '591 patent, currently known to reside in Oakland, CA. *See id.* Ex. 38.

- **Robert Saul** – former Founder-Chairman of DNA synthesis company Operon Technologies, Inc. ("Operon"), knowledgeable of first use of 3'5' dual labeled probes, currently known to reside in San Ramon, CA. *See* Cook Decl. ¶ 17; Hoffman Decl. Ex. 39; Kuegler Decl. ¶ 14.

- **Joel Hedgpeth** – Former Executive of Epoch Biosciences, knowledgeable of ABI's ongoing dispute against Biosearch, currently known to reside in the San Francisco Bay Area. *See* Cook Decl. ¶ 18, Hoffman Decl. Ex. 29.

- **Margaret Roy** – Former scientist at Genentech who used Biosearch probes in 1998, currently known to reside in the San Francisco Bay Area. *See* Cook Decl. ¶ 20, Hoffman Decl. Ex. 31.

- **Bob Watson** – Former scientist at Roche who developed prior art relevant to the patents-in-suit, currently known to reside in the San Francisco Bay Area. *See* Cook Decl. ¶ 21, Hoffman Decl. Exs. 25 & 32.

- **Paul Nelson** – Former Scientist at Clontech, familiar with prior art to the patents-in-suit, currently known to reside in the San Francisco Bay Area. *See* Cook Decl. ¶ 22, Hoffman Decl. Ex. 5.

- **Garry Merry** – Former vice-president of Genomic Services of Operon knowledgeable about the Eurofins' Accused Products and Plaintiffs' failure to enforce the patents-in-suit, currently known to reside in the San Francisco Bay Area. *See* Kuegler Decl. ¶ 15; Hoffman Decl. Ex. 41.

- **Alex Khorlin** – Former director of research and development and oligonucleotide development at Operon knowledgeable about the Eurofins' Accused Products and Plaintiffs' failure to enforce the patents-in-suit, currently known to reside in San Diego, CA. *See* Kuegler Decl. ¶ 16; Hoffman Decl. Ex. 42.

The following *non-party* witnesses are located near the Northern District of California and have material and relevant information relating to this suit:

- **David J. Weitz** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in San Diego, CA. *See* Hoffman Decl. Exs. 11 & 14.

- **Joseph H. Smith** – Attorney involved with the prosecution of one or more of the patents-in-suit, currently known to reside in Henderson, NV. *See id.* Exs. 13 & 14.

- **Nathan Hamilton** – Former president of Operon Biotechnologies, Inc., which used compounds and methods that could be prior art to the patents-in-suit, currently known to reside in Reno, NV. Cook Decl. ¶ 23, Hoffman Decl. Ex. 26.

- **Kary Mullis** – Inventor of PCR and named inventor on several ABI PCR Patents, currently known to reside in Corona del Mar, CA. Cook Decl. ¶ 19, Hoffman Decl. Ex. 40.

In addition, the Northern District of California is a national hub for biotechnology research and development. Numerous sources of prior art to the patents-in-suit are located in the Northern District of California. For example, Genentech, Inc., considered one of the founders of the biotechnology industry, maintains its research center in South San Francisco and likely has relevant prior art. Cook Decl. ¶ 24; Hoffman Decl. Ex. 27. Clontech Laboratories, Inc., also located in the Bay Area, is a biotechnology company believed to have synthesized oligonucleotide probes that could serve as relevant prior art. *Id.*; Hoffman Decl. Ex. 28. Other companies located in California will likely be sources for prior art. *See* Kuegler Decl. ¶ 17.

### F. The Newly-Added Defendants In Midland And Lewisville Are Makeweight

#### 1. Midland Certified

Midland Certified's only known operations are in Midland, Texas. *See* FAC § 24; Hoffman Decl. Ex. 15. Midland Certified is a very small company comprised of two professionals and possibly only a handful of technicians and other employees and, according to an announcement currently on its website, portions of Midland Certified's business have been interrupted or discounted. *See* Hoffman Decl. Ex. 15. Moreover, Midland Certified's sales of the Accused Products are incidental to its sales of other products. *See* Cook Decl. ¶ 25. And, in contrast to Plaintiffs' ongoing dispute with Biosearch, Midland Certified's CEO has never

previously been involved in a dispute with Applied Biosystems, including one relating to licensing of one or more of the patents in suit.  *See id.*

### 2.    Bio-Synthesis

Bio-Synthesis' only known operations are in Lewisville, Texas.  FAC § 16.  Bio-Synthesis is a small company, with only about 35 employees and estimated sales of $3.7M per year.  Hoffman Decl. Ex. 16.  Bio-Sythesis is no longer in good standing with the Texas Secretary of State.  Hoffman Decl. Ex. 17.  Certainly such a defendant does not have the wherewithal to defend itself in a patent litigation, let alone satisfaction of any potential judgment if it is a proven infringer.

## II.    <u>CONVENIENCE, RELEVANCE, AND FAIRNESS DICTATE THAT THIS SUIT BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA</u>

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A motion to transfer venue should be granted upon a showing that the transferee venue "is clearly more convenient" than the venue chosen by the plaintiff.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  The Federal Circuit has routinely held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo*, No. 914, 2009 WL 4842589, at *2 (Fed. Cir. Dec. 17, 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Hoffmann-La Roche*, 2009 WL 4281965 (Fed. Cir. Dec. 2, 2009).  These Federal Circuit cases provide guidance here:

In *TS Tech*, transfer was ordered because there was "no relevant connection between the actions giving rise to th[e] case and the Eastern District of Texas except that certain vehicles

containing TS Tech's headrest assembly have been sold in the venue." 551 F.3d at 1321. The "vast majority of identified witnesses, evidence, and events leading to this case involve[d]" either Ohio (the proposed transferee forum) or Michigan. *Id.*

In *Genentech*, transfer was ordered even though it would inconvenience the plaintiff because "a substantial number of material witnesses reside within the transferee venue [the Northern District of California] and the state of California, and no witnesses reside within the Eastern District of Texas . . . ." 566 F.3d at 1345.

In *Hoffmann-La Roche*, transfer was ordered because there was "no connection between this case and the Eastern District of Texas except that in anticipation of this litigation, [the plaintiff's] counsel in California converted into electronic format 75,000 pages of documents demonstrating conception and reduction to practice and transferred them to the offices of its litigation counsel in Texas." 2009 WL 4281965, at *3. The Federal Circuit condemned the plaintiff's tactic of manipulating venue by moving documents to Texas in anticipation of litigation. *See id.* ("[T]he assertion that these documents are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue.").

In *Nintendo*, transfer was again ordered for want of connection to the Eastern District of Texas. 2009 WL 4842589, at *2. The Federal Circuit found the District Court erred (i) when it only gave minimal weight to the fact that witnesses would have to travel an additional 700 miles to attend trial in Texas versus the proposed transferee venue and (ii) in deeming the Eastern District of Texas to be a centralized location for access to sources of proof. *Id.* at *3-4.

As in these other cases, there is a stark difference here in convenience, relevance, and fairness between the two venues: (1) there is no link to the Eastern District of Texas, (2) the overwhelming majority of witnesses and documents are in the Northern District of California or

very close thereto, and (3) no other convenience factors favor the venue chosen by Plaintiffs.  In addition to hauling Biosearch and Eurofins into an inconvenient forum, Plaintiffs have further abused their forum selection privilege under Section 1391 by ploying to *create* contacts closer to—but not even in—the Eastern District of Texas.  This case should be transferred to the Northern District of California.

### A. Suit Could Have Been Brought In The Northern District of California

The threshold inquiry of whether venue is proper in the Northern District of California is satisfied here.  Under Section 1400(b), venue is proper in any "judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  For purposes of venue, a corporation is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction when the action is commenced.  28 U.S.C. § 1391(c).

Biosearch resides in the Northern District of California because that is where it has maintained its corporate headquarters and therefore was subject to personal jurisdiction at the time this action was commenced.  Eurofins has sufficient contacts with the Northern District of California such that it would be subject to personal jurisdiction in that District.  Among other things, Eurofins has sold Accused Products to customers in the Northern District of California and maintains a sales person in San Francisco, California.  Kuegler Decl. ¶¶ 10-11; *see also* Hoffman Decl. Ex. 18.  Therefore, there is no dispute that venue is proper in the Northern District of California, at least as it concerns Biosearch and Eurofins.

### B. The Private Factors Weigh In Favor Of Transfer

The private interest factors strongly support transferring this action to the Northern District of California. The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen*, 545 F.3d at 315.

> 1. Relative ease of access to sources of proof

The location of evidence is meaningful to the convenience analysis, and advances in copying technology and electronic discovery do not render this factor superfluous. *See Volkswagen*, 545 F.3d at 316; *accord Genentech*, 566 F.3d at 1345-46. Here, the relative ease of access to sources of proof favors transfer to the Northern District of California because most, if not all, of the physical and documentary evidence that will be relevant to this case resides with Biosearch in its principal place of business in Novato, California, within the Northern District. *See Genentech*, 566 F.3d at 1345 (recognizing most evidence comes from the accused infringer). All of the documents relating to the research, design, development, operation, marketing, advertising and sales of Biosearch's Accused Products are in Novato, California. Cook Decl. ¶ 5. Applied Biosystems is also headquartered in the Northern District of California, and it is reasonable to expect that all of its documents and electronically stored information are in the Northern District. Moreover, since Biosearch and Eurofins have no connection to the Eastern District of Texas, and Plaintiffs lack any apparent connection as well, no sources of proof with respect to these parties are located in this District.

> 2. The availability of compulsory process to secure the attendance of witnesses

A venue that has absolute subpoena power is more favorable than a venue without it. *See Volkswagen*, 545 F.3d at 316. Here, there are no known witnesses subject to the Court's subpoena power in the Eastern District of Texas or within 100 miles of where trial will be held. *See* Fed. R. Civ. P. 45(b)(2). The Northern District of California, however, is home to all of Biosearch's employees, many of Plaintiffs' own employees, and at least 19 *non-party* witnesses,

including former Applied Biosystems employees, attorneys involved with the prosecution of the patents-in-suit, and witnesses knowledgeable about potential prior art. Additional third-party witnesses and prior art are likely to be found in the Northern District of California, which is a national hub for biotechnology research and home to Genentech and Clontech. Transfer is favored because the Northern District of California can compel these witnesses to attend *both* depositions and trial, while the Eastern District of Texas cannot.

        3.       The cost of attendance for willing witnesses

In *Nintendo*, the Federal Circuit emphasized that "[t]he convenience and cost of attendance for witnesses is an important factor in the transfer calculus." 2009 WL 4842589, at *3. This factor weighs in favor of transfer here because the vast majority of foreseeable witnesses are located in the Northern District of California. These include: (1) all Biosearch current and former employees with information regarding the Accused Products; (2) Plaintiffs' own current and former employees; (3) two of the four inventors; (4) prosecuting attorneys. By contrast, no witnesses reside in the Eastern District of Texas.

The Fifth Circuit's "100 mile" rule applies because the San Francisco courthouse in the Northern District of California is located approximately 1,622 miles away from Marshall, Texas. Hoffman Decl. Ex. 19. Under this tenet, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317. Application of the "100 mile" rule shows that the witnesses identified in the Northern District of California—including Plaintiffs' own employees—would experience great inconvenience in having to travel the 1,622 miles to Marshall for trial. The other identified witnesses are as a whole located much closer to the Northern District of California than to the Eastern District of Texas, both in terms of mileage and

travel time. *See* Hoffman Decl. ¶¶ 20-23, Exs. 19-24. Taken together, the identified witnesses would need to travel 36,214 additional miles—on average of 1,293 miles for each witness—to get to trial in the Eastern District of Texas. *See* Hoffman Decl. ¶ 20, Ex. 19.

Plaintiffs cannot credibly assert that the Eastern District of Texas would be more convenient for its own witnesses than the Northern District of California. It has no identified business connection to the Eastern District of Texas. From its business locations in Foster City, California, and Carlsbad, California, travel to the Eastern District of Texas would be significantly more time-consuming and expensive. *See* Hoffman Decl. ¶¶ 21-23, Exs. 20-24.

Finally, Plaintiffs attempt to *create* contacts closer to—but not even in—the Eastern District of Texas by adding defendants in Midland and Lewisville does not alter the weight of this factor. Compared to Biosearch's, the operations of these newly-added defendants are miniscule, especially with respect to the Accused Products; as such, these defendants will likely only have a few employee witnesses with knowledge about the Accused Products. This will not come close to outnumbering the California-based witnesses that Biosearch, Eurofins, and Plaintiffs will need to present.

Taking into account all parties, therefore, the Northern District of California is clearly a more convenient forum.

        4.    <u>Other practical problems that make trial of a case easy, expeditious, and inexpensive</u>

This case is in its infancy: there has been no discovery or scheduling order. As such, no practical problems exist that should deter transfer to the Northern District of California.

### C.   The Public Factors Weigh In Favor Of Transfer

#### 1.   The local interest in having localized interests decided at home

As in *TS Tech*, there is "no relevant connection between the actions giving rise to this case and the Eastern District of Texas" except that on certain limited occasions, the Accused Products have been sold by Biosearch in the venue.  *TS Tech*, 551 F.3d at 1321.  The Federal Circuit has rejected this as a basis for concluding that this factor, by itself, favors transfer.  *Id.*

If sales *were* considered, they would weigh heavily *in favor* of transfer to the Northern District of California.  Biosearch has no direct marketing business, and does not employ any sales representatives within Texas.  Cook Decl. ¶ 4.  To the extent that any of Biosearch's Accused Products are sold within the Eastern District of Texas, sales from these customers amounted to less than 1% of Biosearch's revenue in 2008.  *See id*.  Similarly, Eurofins has no sales representative in Texas and sales in Texas of Eurofins' Accused Products amounted to less than $17,000 for 2008 and 2009, combined, which is approximately 10 times less than Eurofins' sales of such products in California in 2008-2009.  Kuegler Decl. ¶¶ 6-7, 11.

The Northern District of California, on the other hand, has a far greater localized connection to this case.  As mentioned above, three of the parties are headquartered in California, ABI and Biosearch within the Northern District.  The vast majority of likely witnesses, evidence, and events leading to this case involve the Northern District of California.  *See* Cook Decl. ¶¶ 4-7. None of the parties have an office in the Eastern District of Texas; no likely witnesses reside in the Eastern District of Texas; and no evidence is located within the venue.  Because this case has no meaningful connection with the Eastern District of Texas, and the Northern District of California does have a localized interest in deciding this case, this factor favors transfer.

### 2. The administrative difficulties flowing from court congestion

There would not be any administrative difficulties that would arise from transferring or retaining this case. Accordingly, this factor is neutral.

### 3. The familiarity of the forum with the law that will govern the case

This case will be governed by the Patent Laws of the United States. The Eastern District of Texas and the Northern District of California both are familiar with the patent laws. This factor is neutral.

### 4. The avoidance of unnecessary problems of conflict of laws or in the application of foreign law

This case poses no conflicts of law issues and does not implicate foreign law. This factor is neutral.

## III. ALL NON-NEUTRAL FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER

The Northern District of California clearly is a more convenient venue than the Eastern District of Texas: (i) the sources of proof related to Biosearch and its accused products are located in the Northern District of California, where Biosearch has its headquarters; (ii) Applied Biosystems and Life Technologies are both headquartered in California, Applied Biosystems within the Northern District; (iii) no likely fact witnesses reside in or near the Eastern District of Texas; (iv) it is inconvenient and expensive for the parties' witnesses to travel to Marshall; and (v) there are no sources of proof in the Eastern District of Texas. The newly-added defendants in Texas should be disregarded since they were added to manipulate venue; even if considered, they do not change the situation. Biosearch and Eurofins respectfully request that this Court grant the requested transfer.

Dated: January 5, 2010				Respectfully submitted,

						MORGAN, LEWIS & BOCKIUS LLP


						*/s/ Winstol D. Carter, Jr.*
						Winstol D. Carter, Jr. (TX Bar No. 03932950)
						Email:  wcarter@morganlewis.com
						1000 Louisiana Street, Suite 4000
						Houston, Texas 77002
						(713) 890-5000 Telephone
						(713) 890-5001 Facsimile

						Daniel Johnson, Jr. (admitted Pro Hac Vice)
						Email: djjohnson@morganlewis.com
						Ahren C. Hoffman (TX Bar No. 24053269)
						Email: ahoffman@morganlewis.com
						One Market, Spear Street Tower
						San Francisco, CA 94105
						(415) 442-1000 Telephone
						(415) 442-1001 Facsimile

						*Attorneys for Defendant Biosearch Technologies, Inc.*
Dated: January 5, 2010				SAYLES WERBNER


						*/s/ Richard A. Sayles*
						Richard A. Sayles (TX Bar No. 17697500)
						Email:  dsayles@swtriallaw.com
						1201 Elm Street, Suite 4400
						Dallas, Texas 75270
						(214) 939-8701 Telephone
						(214) 939-8787 Facsimile

						*Attorneys for Defendant Eurofins MWG Operon Inc.*

**CONSENT TO FILE ON BEHALF OF COUNSEL FOR DEFEDANT EUROFINS MWG OPERON INC.**

I, Winstol D. Carter, Jr., attest that concurrence in the filing of this motion and supporting declarations and exhibits has been obtained from counsel for Eurofins. I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of January, 2010, in Houston, Texas.

*/s/ Winstol D. Carter, Jr.*
Winstol D. Carter, Jr.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's Case Management/Electronic Case Filing and/or electronic mail on January 5, 2010.

*/s/ Winstol D. Carter, Jr.*
Winstol D. Carter, Jr.

**CERTIFICATE OF CONFERENCE**

This motion is opposed. Pursuant to Local Rule CV-7(h), I, Daniel Johnson, Jr., counsel for Biosearch, contacted Plaintiffs' counsel requesting their consent to transfer this action to the Northern District of California. In October 2009, I participated in a telephonic conference with Manny Vacchiano, counsel for Plaintiff Life Technologies Corporation, and one with William Dawson, counsel for Plaintiffs Life Technologies Corporation and Applied Biosystems LLC, during which we discussed transfer to the Northern District of California. Counsel for Plaintiffs would not consent to the proposed transfer. On January 5, 2010, I left a voicemail for Mr. Dawson again requesting consent to transfer this action to the Northern District of California. Mr. Dawson never responded.

*/s/ Daniel Johnson, Jr.*
Daniel Johnson, Jr.
