**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., EUROFINS MWG OPERON INC., and THE MIDLAND CERTIFIED REAGENT COMPANY, INC.,**<br><br>    **Defendants.** | C. A. NO. 2:09-CV-00283 TJW-CE |

**PLAINTIFFS LIFE TECHNOLOGIES CORPORATION'S ("LT") AND
APPLIED BIOSYSTEMS, LLC'S ("AB") OPPOSITION TO DEFENDANTS
BIOSEARCH TECHNOLOGIES, INC. ("BIOSEARCH") AND EUROFINS MWG
OPERON INC.'S ("EUROFINS") MOTION TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(A)**

## I. Introduction

Defendants Biosearch and Eurofins' (collectively "Movants'") motion to transfer to the Northern District of California is based on false assertions, the avoidance of key facts, and the unsubstantiated listing of several alleged witnesses having little, or no, relevance. Movants, for example, falsely claim this case has no ties to this State or venue in spite of the fact Defendant Bio-Synthesis, Inc. ("Bio-Synthesis") is located in this venue and Plaintiffs maintain directly relevant facilities in this State. Movants' motion also ignores the locations of witnesses and documents for Defendants Eurofins, Bio-Synthesis, and The Midland Certified Reagent Company, Inc. ("Midland"), as well as Plaintiffs LT and AB (collectively "Life Technologies").

Because Movants have failed to meet their burden of showing that the transferee forum is clearly more convenient than this District, Life Technologies requests that the Court deny Movants' motion to transfer to the Northern District of California under 28 U.S.C. § 1404(a). Movants' requests should be denied for at least four reasons: (a) the Eastern District of Texas has strong ties to this matter; (b) the parties involved, as well as relevant documents and witnesses, are dispersed across the United States making Texas, not California, the center of gravity for this lawsuit; (c) Movants' cited venue cases are not applicable to the facts of this case; and (d) it will take longer to adjudicate this case in the Northern District of California, thereby harming Life Technologies.

### a) The Eastern District of Texas has Strong Ties to this Litigation

Contrary to Movants' assertions, this litigation has multiple connections to the Eastern District of Texas. In arguing for transfer, Movants' motion to transfer misrepresents multiple relevant facts by claiming this case has no connection with the Eastern District of Texas. For example, Movants state that "none [of the Defendants] are

located in the Eastern District of Texas." Dkt. No. 27, Movants' Mot. to Transfer, at 1. This statement is **false**. Bio-Synthesis, a Defendant who has not joined Movants' motion, has its offices in Lewisville, Texas, well within this Court's jurisdiction. *See* Exhibit 1, Wooten Decl., ¶ 2. Perhaps recognizing the problem Bio-Synthesis represents to their motion, Movants also attempt to trivialize the importance of this Defendant by contending that it "does not have the wherewithal to defend itself in patent litigation." Movants' Mot. to Transfer, at 8. But Movants have proffered no evidence in support of this speculative assertion. To the contrary, Movants state in their own motion that Bio-Synthesis employs 35 employees and has annual revenues of approximately $4 million. Movants' Mot. to Transfer, at 11. Moreover, because Defendant Bio-Synthesis' headquarters, and primary operations, lie within this jurisdiction, relevant documents and witnesses from this Defendant reside within this venue.

Movants' motion also fails to address multiple other connections the parties have to this State and the Eastern District of Texas. For instance, Plaintiff Life Technologies sells dual-labeled probe products covered by the patents-in-suit to multiple customers within the Eastern District of Texas. *See* Exhibit 2, Walworth Decl., ¶ 5. Furthermore, Biosearch sells products into the Eastern District of Texas. Movants' Mot. to Transfer, at 4. Nevertheless, in spite of Movants' Texas sales, Movants' motion also falsely claims that Eurofins has "no connections to Texas." Movants' Mot. to Transfer, at 5. This statement is further contradicted by the local sales representative Eurofins has listed on its website for coverage of its "Southwest" region, which specifically includes Texas. *See* Exhibit 3, http://www.operon.com/contact/salessupport.aspx.

    b) **The Center of Gravity of this Lawsuit Lies in Texas, Not California**

In addition to falsely claiming that this lawsuit has no connection to this venue, Movants also improperly create the false impression that this case is California-centric by omitting from their motion multiple facts related to the location of relevant witnesses and documents. For example, Movants ignore the fact that there are substantial relevant documents and witnesses present in the Western, Northern, and Southern Districts of Texas, as well as Alabama, California, Colorado, Maryland, and New York.

For example, Life Technologies maintains a facility in Austin, Texas employing approximately 350 individuals, that manufactures, sells, and provides technical support for dual-labeled probes covered by the asserted patents. *See* Exhibit 4, Kim Decl., ¶¶ 5-7. This facility also houses relevant documents related to: (a) research and development of multiple products covered by the patents-in-suit, including lab notebooks, technical specifications, and commercialization documents; and (b) the manufacture, technical support, and sale of products covered by the patents-in-suit. *Id.* ¶¶ 8-9. Furthermore, multiple Life Technologies witnesses with knowledge concerning these documents reside and work in the Austin area. *Id.* ¶ 10. In addition to these Austin-based employees, Life Technologies also employs witnesses with knowledge of relevant information that work and reside in other areas of Texas, including a Vice President of Central Region Sales in Houston, Texas, and five (5) Texas-based Field Service Engineers residing in Dallas, Fort Worth, and Houston. *See* Exhibit 2, Walworth Decl., ¶¶ 6-7.

Movants' motion further overlooks the fact that Eurofins maintains its headquarters in Huntsville, Alabama and, therefore, relevant documents and witnesses at this location reside conveniently closer to Texas than California, thereby contravening Movants' assertion that the center of gravity lies in Northern District of California.

In addition to omitting any discussion of the presence of relevant witnesses and documents in Alabama, Movants' motion also attempts to bolster its California-centric agenda by listing several witnesses from California that lack any substantive tie to this litigation, or are listed without providing any foundational support for their alleged knowledge. Movants' Mot. to Transfer, at 5-7. For example, Movants self-servingly identify: Alex Andrus as a former employee of Plaintiff AB having information regarding a prior, **unrelated** litigation between AB and Defendant Biosearch; and Kary Mullis as the inventor of PCR and named inventor of several **unrelated** patents. Movants' Mot. to Transfer, at 4 and 7. Movants also identify multiple **former** employees of Eurofins' alleged predecessor, Operon (such as Paul Saul, Garry Merry, Alex Khoclin, and Nathan Hamilton) without providing any foundational showing of their alleged knowledge. *Id.* at 6-7. Movants' citations in support of these witnesses are merely declarations from Biosearch's CEO, Biosearch's counsel and Eurofin's CFO that they **believe** these witnesses possess the alleged information. *See* Movants' Mot. to Transfer, Decls. of Cook, Hoffman, Kuegler.

Finally, relevant witnesses and documents closer to the current venue include:

- witnesses and documents from Life Technologies' Frederick, Maryland facility, which manufactures and sells dual-labeled probe products covered by the asserted patents;[1]

- witnesses and documents from Life Technologies' Grand Island, New York facility, which handles sales of dual-labeled probe products covered by the asserted patents manufactured in the Frederick, Maryland facility;[2]

---

[1] *See* Exhibit 5, Hayes Decl.
[2] *See* Exhibit 6, Hinkle Decl.

PAGE 4

- Midland's witnesses and documents in the Western District of Texas; and
- witness/inventor Jeffrey Marmaro who resides in Aurora, Colorado.[3]

This litigation, therefore, represents a decentralized case with multiple connections to the Eastern District of Texas that does not favor transfer to California.

### c) Key Facts Support Venue Remaining in the Eastern District of Texas

In an attempt to leverage recent venue decisions, Movants omit key facts from this case in their analysis—facts that change the outcome and favor maintaining venue in the Eastern District of Texas. For example, Life Technologies has shown the existence of relevant witnesses and information within this District through Defendant Bio-Synthesis, thereby demonstrating a "connection between this case and [this District]" that was simply not present in *Hoffmann*. *See In re Hoffmann-La Roche Inc*., 587 F.3d 1333, 1336 (Fed. Cir. 2009). In addition, this lawsuit "calls into question the work and reputation of [Bio-Synthesis who] conduct[s] business in" this District, creating a strong local interest in keeping the case. *Id*. Further, substantial relevant evidence lies within this District independent of Life Technologies' actions. For example, Bio-synthesis performed its infringing acts—and its offices existed—in this venue well before commencement of litigation. *See* Exhibit 1, Wooten Decl., ¶ 2. Unlike *Hoffmann*, there has been no "evidence manufacturing" to create a tie within this District. *Id*. at 1336-37.

In relying on *Balthaser,* Movants self-servingly argue that inclusion of Bio-Synthesis solely represents an attempt to manipulate venue, but at least two facts distinguish this case: (1) Life Technologies did not add Bio-Synthesis for the express purpose of complying with *TS Tech*; and (2) Bio-Synthesis represents a company "involved in the controversy" and is not a sham entity. In *Balthaser*, the plaintiff filed

---

[3] *See* Exhibit 7, Marmaro Decl.

suit before the Federal Circuit's *TS Tech* decision. But soon after the Federal Circuit ruled on *TS Tech*, the *Balthaser* plaintiff added Texas-based defendants. *Balthaser Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 553 (E.D. Tex. 2009). The *Balthaser* plaintiff admitted that it added the Texas defendants **for the sole purpose of** complying with *TS Tech*, nothing more—put differently, they probably would not have amended their complaint but for the *TS Tech* decision. *Id.* at 548 (emphasis added). This explanation led the Court to interpret the plaintiff's action solely as an attempt to game the system. *Id.* at 553. In contrast, Life Technologies was actively monitoring potential breaches of its patent rights related to the technology-at-issue prior to the filing of the Original Complaint and continued this monitoring and related investigations after filing. Furthermore, Life Technologies had to satisfy its Rule 11 obligation before accusing any new parties of patent infringement. Surely, Movants do not contend such an investigation was improper. That such investigation led to the inclusion of Texas-based and Alabama-based companies does not signify impropriety. Life Technologies has a right to seek redress for patent infringement.

Second, unlike in *Balthaser*, Bio-Synthesis represents a company "involved in the controversy" and does not represent a sham entity with little or no sales. *See* 654 F. Supp. 2d at 553. In *Balthaser,* this Court concluded that the Texas-based defendants did not have a real stake in the litigation because two of the defendants appeared in the lawsuit *pro se*, one had yet to make an appearance, and the fourth opposed transfer for hardship reasons. *Id.* Here, outside counsel represents Bio-Synthesis, it has made an appearance, and it has not opposed transfer for hardship reasons. Further, Bio-Synthesis' revenue of approximately $4 million last year, at least a portion of which is attributable to

sales of infringing products, demonstrates that it is an Eastern District of Texas company with an interest in the outcome of this lawsuit. *See* Movants' Mot. To Transfer, at 11. As such, Bio-Synthesis' importance to the case cannot be ignored.

### d) It Will Take Longer to Adjudicate the Case in the Northern District of California

The Eastern District of Texas has an expeditious docket as compared to the Northern District of California. This Court's recent opinion in *Centre One v. Vonage Holdings Corp.* pinpoints the average time to trial in this venue at 18.5 months. No. 6:08CV467, 2009 U.S. Dist. LEXIS 69683, at *24 (E.D. Tex. Aug. 10, 2009). In contrast, the average time to trial in the Northern District of California is 30 months – 11.5 months longer than this District's average. *See* Exhibit 8, http://www.uscourts.gov/cgi-bin/cmsd2008.pl. As such, this weighs in favor of retention of the case in this District.

## II. Factual Background

Before filing this patent infringement lawsuit, Life Technologies was actively monitoring licensing avenues and potentially infringing activities as related to the patents-in-suit across the United States. For example, Life Technologies is concurrently discussing licensing of the patents-in-suit with Sigma-Genosys and its parent Sigma-Aldrich (based in The Woodlands, Texas, and St. Louis, Missouri, respectively). *See* Exhibit 9, Cole Decl., ¶ 4. This on-going research led to the identification of Eurofins, Bio-Synthesis, and Midland. Life Technologies then amended its Original Complaint to add the three new entities and served it on all of the named Defendants.

### III. Applicable Law

While the plaintiff's choice of forum is not a separate 1404(a) factor, the Fifth Circuit has noted the "importance that [courts] must give to the plaintiff's choice" of venue with regard to the movant's burden of proof. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008). Courts cannot give "inordinate weight to the plaintiff's choice of venue," but "the plaintiff's choice of venue is accorded deference." *In re TS Tech United States Corp.*, 551 F.3d 1315 (Fed. Cir. 2008). Indeed, in the Fifth Circuit, "[w]hen the transferee venue is not **clearly more convenient** than the venue chosen by the plaintiff, the plaintiff's choice **should be respected**." *Volkswagen* 545 F.3d at 315 (emphasis added).

The Court assesses convenience by examining private and public factors. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re TS Tech USA Corp.*, 551 F.3d at 1319 (applying Fifth Circuit law). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. That the plaintiff does not itself reside in the forum it has chosen "does not usefully inform the Court's analysis." *Z-tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 572 (E.D. Tex. 2004).

This Court has recently reiterated that transfer is unwarranted when the relevant evidence is spread across the nation, even if transfer may be more convenient for some of

the witnesses. *MHL Tek, LLC v. Nissan Motor Co.,* No. 2:07CV289, 2009 WL 440627 (E.D. Tex. Feb 23, 2009) (denying transfer to Michigan even though the inventors, prosecutors, and some defense witnesses were located there because the other defendants were spread across the country and globe); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, Nos. 6:08CV211, 6:08CV262, & 6:08CV263, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) (denying transfer to California even though it would be more convenient for some witnesses because other witnesses were spread across the country); *Invitrogen v. Gen. Elec. Co.,* No. 6:08CV113, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) (denying transfer to Maryland even though that district would be more convenient for some witnesses and provide compulsory process for other witnesses where it would also be less convenient for some witnesses residing in California).

## IV. Argument

The private factors weigh against transfer because the evidence and witnesses are spread across the United States, and the Eastern District of Texas is a more centralized location than the Northern District of California. Transfer will make attending trial less convenient for witnesses located in Texas, Alabama, Colorado, Maryland, and New York. Furthermore, no evidence has been offered that suing *all* the parties would have been proper in the proposed venue. The public factors also weigh against transfer because this venue has a local interest in the conduct of Bio-Synthesis and because sending the case to the Northern District of California could lengthen the time to trial. Given these facts, Movants have not "clearly demonstrated" that transfer is warranted.

### a) Private Factors Favor Denying Transfer

### 1. The Sources of Proof Weigh Against Transfer

The parties in this litigation maintain evidence in Texas, Alabama, Maryland, New York, and California. Movants' motion, however, only focuses on the California location of Biosearch's documents. But such narrowed focus provides an incomplete picture—it fails to account for the relative ease of access to sources of proof of other parties. That is, it fails to account for Bio-Synthesis' evidence within this venue; it also fails to account for Midland's evidence in Texas, and Eurofins' evidence in nearby Alabama. And while Life Technologies admits that it possesses evidence in California, Movants fail to account for Life Technologies' evidence from its Austin, Texas, facility concerning research and development of products relating to the asserted patents. *See* Exhibit 4, Kim Decl., ¶¶ 5-10. Life Technologies also has Fredrick, Maryland and Grand Island, New York facilities, which are much closer to this District than California, with relevant documents and witnesses, including manufacturing, sales, and technical support employees, as well as product catalogs, lab notebooks, product requirements, technical specifications, and commercialization documents. *See* Exhibit 5, Hayes Decl., ¶¶ 5-8, and Exhibit 6, Hinkle Decl., ¶¶ 5-6. Finally, Life Technologies is in discussions with third parties Sigma-Genosys and Sigma-Aldrich, with potential witnesses and documents located in The Woodlands, Texas and St. Louis, Missouri, respectively. *See* Exhibit 9, Cole Decl., ¶ 4.

Movants cite to no legal authority that a court should only focus on one party's sources of proof. Movants have, furthermore, not identified "documents or evidence located in [California] that cannot be produced electronically or easily transported to this

[venue]." *Jackson v. Intel Corp.*, No. 2:08CV154, 2009 WL 749305, *2 (E.D. Tex. Mar. 19, 2009) (finding that this factor did not weigh in favor of transfer).

### 2. Availability of Compulsory Process is Neutral

A venue that enjoys "*absolute* subpoena power for both depositions and trial" is favored over one that does not. *Volkswagen*, 545 F.3d at 316 (emphasis in original). In this case, third-party witnesses are scattered throughout the country, denying either the current or proposed forum absolute subpoena power. For example, Movants' own motion lists Joseph H. Smith of Henderson, Nevada a (prosecuting attorney) and Jeffrey Marmaro of Aurora, Colorado (a named inventor). *See* Movants Mot. to Transfer at 4 and 7. Given the diverse locations of witnesses outside of California, Movants' proposed venue does not possess complete subpoena power, precluding a finding in favor of transfer. Furthermore, inventors Kenneth Livak (California), Susan Flood (Washington), and Jeffrey Marmaro (Colorado) have agreed to make themselves available for trial in the Eastern District of Texas without subpoena.[4] *See* Exhibits 7, 10 and 11, respectively, Decls. of Marmaro, Livak, and Flood. As such, this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses Would Increase if Transferred

The cost of attendance also weighs against transfer. The following chart[5] illustrates the increased distances Eurofins, Bio-Synthesis, Midland, Life Technologies and a willing third party would have to travel to California if the case were transferred.

---

[4] The only other named inventor on the asserted patents, Khairuzzaman Bashar Mullah, is an employee of Plaintiff AB, and so is subject to the subpoena power of this Court.

[5] Distances are based on linear air miles and were determined using a distance calculator at http://www.infoplease.com/atlas/calculate-distance.html. *See* Exhibit 1, Wooten Decl., ¶ 3 and Attachment A.

| Party/Witness (Principal place of business or residence) | Distance to Eastern District of Texas (Marshall) | Distance to Northern District of California (San Francisco) | Increase in distance if case were transferred |
|---|---|---|---|
| Defendant Eurofins (Huntsville, Alabama) | 473.0 Miles | 1999.9 Miles | 1526.9 Miles |
| Defendant Bio-Synthesis[6] (Lewisville, Texas) | 156.7 Miles | 1466.6 Miles | 1309.9 Miles |
| Defendant Midland[7] (Midland, Texas) | 452.9 Miles | 1219.1 Miles | 766.2 Miles |
| Plaintiff Life Technologies (Austin, Texas) | 253.8 Miles | 1502.2 Miles | 1248.4 Miles |
| Plaintiff Life Technologies (Frederick, Maryland) | 1059.3 Miles | 2413.6 Miles | 1354.3 Miles |
| Plaintiff Life Technologies (Grand Island, New York) | 1107.7 Miles | 2294.7 Miles | 1187 Miles |
| Jeffrey Marmaro[8] (Aurora, Colorado) | 765.8 Miles | 957.9 Miles | 192.1 Miles |

While Biosearch would benefit by the transfer, as its offices are located in California, it does so at the expense of Eurofins, Bio-Synthesis, Midland, and inventor Jeffrey Marmaro, as well as at the expense of Life Technologies and in derogation of Plaintiffs' choice of forum. Indeed, Movants do not mention Eurofins in its cost of attendance analysis, and completely ignore Bio-Synthesis' inconvenience by dismissing it as an entity "that will likely have a few employee witnesses with knowledge about the Accused Products." Movants' Mot. to Transfer, 13  With respect to the latter, again Movants offer no evidence to support this speculative claim. The fact remains that Bio-Synthesis has 35 employees, and it is possible that a large number of them may have knowledge relevant to this case. But no matter the number, those witnesses will nonetheless be substantially inconvenienced.

---

[6] It has not joined Movants' motion, meaning the travel inconvenience would be significant.
[7] Midland has filed a motion to sever and transfer to the Western District of Texas.
[8] *See* Exhibit 7, Marmaro Decl.

Movants also ignore the relative cost of goods and services that witnesses would be required to purchase in the Northern District of California as compared with Marshall, Texas. In every consumable category, the Northern District of California is, on average, more expensive than Marshall, Texas. *See* Exhibit 12, http://www.bestplaces.net. Transferring this case would increase the cost of attendance and reduce convenience of party and non-party witnesses. As such, this factor weighs against transfer.

### 4. No Evidence Bio-Synthesis Could be Sued in the Transfer Venue

Movants have failed to demonstrate that the Northern District of California has personal jurisdiction over Bio-Synthesis or Midland; consequently, Movants have not met their burden of establishing that this litigation could have been brought in the proposed forum. As stated by this Court in *Balthaser*, "transfer of suit involving multiple defendants is ordinarily proper **only if all** of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court." 654 F. Supp. 2d at 449 (emphasis added) (internal quotations omitted). Movants, however, make no mention of Bio-Synthesis or Midland when discussing whether this lawsuit was proper in the transferee court. Because of this shortcoming, this weighs against transfer.

Movants have essentially requested in the alternative that the Court sever and transfer them to California. Movants Mot. to Transfer, at 5. But to do so would result in a "waste[] of time, energy, and money" because it would create two cases with similar issues. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349 (Fed. Cir. 2009) (internal quotations omitted). To be sure, this Court has stated that severing a case is improper when a "defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two

places." *Balthaser*, 654 F. Supp. 2d at 449-550. As discussed above, Bio-Synthesis' significant activities within this venue demonstrate that it is "involved in the controversy." Further, Movants, Bio-Synthesis, and Midland share the common issues of enforceability, validity, and infringement. Given these facts, severing this case would present the type of problems that support denial of this motion to transfer.

### b) Public factors favor denying Movants' transfer motion

#### 1. This District has a Strong Interest in Adjudicating this Case

Because this lawsuit "calls into question the work and reputation" of Eastern District-based Bio-Synthesis, it creates a strong local interest in keeping the case. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336. With 35 workers and approximately $4 million in annual revenue, Bio-Synthesis' activities have a significant impact in this venue's economy. Movants' Mot. to Transfer, at 11. As such, it cannot be ignored.

Also, Movants' assertion that there is no meaningful connection with this venue because none of the parties have an office in the District and that no evidence is located within the venue is blatantly **false**. Movants' Mot. to Transfer, at 14. Most of Lewisville[9], Texas, lies within this District, and Bio-Synthesis' home office address of 612 East Main Street, Lewisville, TX 75057, confirms that it is within this venue. *See* Exhibit 1, Wooten Decl., at ¶ 2. Furthermore, both Plaintiffs and Movants sell dual-labeled probe products in this District. *See* Exhibit 2, Walworth Decl., ¶ 5 and Movants' Mot. to Transfer, at 14. Thus, this factor weighs against transfer.

#### 2. Transfer Could Increase the Time to Trial by 62%

As noted above, on average it takes 18.5 months to get to trial in this District compared to 30 months in the Northern District of California. The 62% increase weighs

---

[9] A small southern portion of the city does cross into the Northern District of Texas.

in favor of retention of the case in this venue. Also, if transferred, this delay will harm Life Technologies because it seeks an injunction to stop Movants' and Bio-Synthesis' infringing behavior, however, enforcement of such an injunction will take longer in California. Life Technologies notes that it is a direct competitor of each of the Defendants and that this situation is not one in which the plaintiff does not practice the patent, is not a competitor, and *only* seeks monetary damages.[10]

### 3. This District is Equally Familiar with Patent Law as the Northern District of California

This factor does not support transfer because this Court is certainly as capable of applying patent law as the Northern District of California.

### 4. No Issues Involve Conflict of Laws or Application of Foreign Law

This factor is neutral.

## V. Conclusion

Movants have failed to show that the transferee forum is "clearly more convenient"; thus, this Court should deny their motion to transfer.

Dated: February 22, 2010                    Respectfully submitted,

                                            /s/ *David K. Wooten*
                                            David K. Wooten (State Bar No. 24033477)
                                            Leisa Talbert Peschel (State Bar No. 24060414)
                                            VINSON & ELKINS, LLP
                                            1001 Fannin Street, Suite 2500
                                            Houston, TX  77002-6760
                                            Tel:  (713) 758-2095
                                            Fax:  (713) 615-5936
                                            dwooten@velaw.com
                                            lpeschel@velaw.com

---

[10] In such cases, a delay may not be as harmful because plaintiff can still be made whole. *Wacoh Co. v. Chrysler LLC*, Nos. 08CV456 & 08CV691, 2009 WL 36666, *4 (W.D. Wis. Jan. 7, 2009).

        Otis Carroll (State Bar No. 03895700)
Collin Maloney (State Bar No. 00794219)
IRELAND, CARROLL & KELLEY, PC
6101 S. Broadway, Suite 500
Tyler, TX 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Fedserv@icklaw.com


William B. Dawson (State Bar No. 05606300)
VINSON & ELKINS, LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201-2975
Tel: (214) 220-7926
Fax: (214) 999-7926
bdawson@velaw.com

Tracey B. Davies (State Bar No. 24001858)
Margaret J. Sampson (State Bar No. 24027953)
VINSON & ELKINS, LLP
The Terrace 7
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
Tel: (512) 542-8400
Fax: (512) 542-8612
tdavies@velaw.com
msampson@velaw.com


*Attorneys for Plaintiffs Life Technologies Corporation and Applied Biosystems, LLC*

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 22nd day of February, 2010.

              */s/ David K. Wooten*

              David K. Wooten

US 276556v.6