UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIFE TECHNOLOGIES CORPORATION | § | |
| AND APPLIED BIOSYSTEMS, LLC | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-283-TJW-CE |
| | § | |
| BIOSEARCH TECHNOLOGIES, INC., | § | |
| ET AL. | § | |

**ORDER**

**I.     Introduction**

Pending before the court is the defendants Biosearch Technologies, Inc. ("Biosearch") and Eurofins MWG Operon Inc.'s ("Eurofins") (collectively "defendants") motion to transfer venue, or, alternatively, to sever (Dkt. No. 27). The defendants contend that the Northern District of California is a more convenient forum than the Eastern District of Texas and seek to transfer venue pursuant to 28 U.S.C. § 1404(a). The court, having considered the venue motion and the arguments of counsel, DENIES the defendants' motion to transfer venue because the balance of the "private" and "public" *forum non conveniens* factors does not demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiffs. *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

**II.    Factual and Procedural Background**

The plaintiff Life Technologies Corporation ("Life Technologies") is a Delaware corporation, having its principal place of business in Carlsbad, California, and the plaintiff Applied

Biosystems, LLC ("Applied Biosystems") is a Delaware limited liability corporation, having its principal place of business in Foster City, California (collectively "plaintiffs"). On September 18, 2009, the plaintiffs filed their complaint in the Marshall Division of the Eastern District of Texas against Biosearch, a California corporation, with its principal place of business in Novato, California. Plaintiffs accused Biosearch of infringing U.S. Patent Nos. 5,538,848 ("the '848 Patent"), 5,723,591 ("the '591 Patent"), 5,876,930 ("the '930 Patent"), 6,030,787 ("the '787 Patent"), and 6,258,569 ("the '569 Patent"). Then, on November 5, 2009, plaintiffs filed their first amended complaint, naming three new defendants, including: (1) Eurofins, a Delaware corporation, with its principal place of business in Huntsville, Alabama; (2) Bio-synthesis, Inc. ("Bio-Synthesis"), a Texas corporation, with its principal place of business in Lewisville, Texas; and (3) Midland Certified Reagent Corporation, Inc. ("Midland Certified"), a Texas corporation, with its principal place of business in Midland, Texas. On January 5, 2010, defendants Biosearch and Eurofins filed this motion to transfer venue to the Northern District of California or, alternatively, to sever, so that the claims against Biosearch and Eurofins may be transferred to the Northern District of California (Dkt. No. 27).

**III.    Legal Standards**

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

For the purpose of facilitating a § 1404(a) change of venue, Rule 21 of the Federal Rules of Civil Procedure allows the court to sever any claim against a party. *See Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. Civ.A.3:04-CV-2391-L, 2005 WL 2415960, at *4 (N.D. Tex. Sept. 30, 2005). The district court has broad discretion when deciding whether to sever, *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000), but severance should be granted only when the severed defendant is merely peripherally involved in the litigation and the administration of justice would be served. *See In re Volkswagen of Am., Inc.* (*Volkswagen III*), 566 F.3d 1349, 1351 (Fed. Cir. 2009); *Toshiba,* 2005 WL 2415960, at *4. As such, severance is improper when it

would cause the same issues to be re-litigated in two places because the defendant over whom jurisdiction is retained is integrally involved in the controversy. *See Volkswagen III*, 566 F.3d at 1351; *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009). Severance should be granted only if three conditions are met: (1) the remaining claims are peripheral to the severed claims; (2) adjudication of the severed claims would potentially dispose of the remaining claims; and (3) the § 1404(a) factors warrant transfer of the severed claims. *Toshiba*, 2005 WL 2415960, at *4; *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D. N.J. 2001); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 421-22 (E.D. Va. 2000).

**IV.    Analysis**

    **A.    § 1404(a) - Venue Transfer**

The court will first address defendants' contention that defendant Bio-Synthesis should be disregarded in the § 1404(a) transfer analysis because plaintiffs joined Bio-Synthesis only to manipulate venue. Defendants rely on this court's holding in *Balthasar* to support their contention that the court should discount defendant Bio-Synthesis. *Balthasar*, 654 F. Supp. 2d at 552-53. In *Balthasar*, this court was presented with testimonial evidence indicating that the plaintiff added Texas-based defendants in an attempt to comply with the Federal Circuit's *TS Tech* decision, which had been handed down less than a month earlier. *Id.* at 548 n2, 553 n4. Furthermore, the Texas-based defendants did not appear to have a real stake in the litigation considering that two of the four defendants appeared pro se, one had yet to make an appearance at the time the motion to transfer was decided, and the fourth opposed transfer for hardship reasons. *Id.* at 553. For both of these reasons, this court found that the Texas-based defendants had apparently been added for the sole purpose of complying with the Federal Circuit's *TS Tech* decision and therefore, disregarded them

in its § 1404(a) transfer analysis. *Id.* This case, however, is distinguishable from *Balthasar* on both of these grounds. First, the defendants have produced nothing but blanket accusations that plaintiffs added defendant Bio-Synthesis for the sole purpose of maintaining venue in this district. Plaintiffs deny these allegations and argue that they were actively monitoring potential breaches of their patent rights prior to filing suit and that they continued such monitoring subsequent to filing. Plaintiffs also note that they had to comply with their Rule 11 obligations before accusing any new parties of patent infringement. Second, defendants have provided no evidence that defendant Bio-Synthesis does not have a real stake in this litigation. On the contrary, defendant Bio-Synthesis has engaged counsel and has a clear stake in the outcome of this litigation considering that at least a portion of their approximately $4 million in annual revenue is attributable to sales of the allegedly infringing products. Thus, considering the speculative nature of defendants' accusations and the distinctions between this case and *Balthasar*, the court concludes that it cannot ignore defendant Bio-Synthesis in this § 1404(a) analysis.

    **1.**    **Proper Venue**

As a threshold matter, the court must determine if venue is proper in the Northern District of California. Transfer of a suit involving multiple defendants is ordinarily proper "'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'" *Id.* at 549 (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir.1984)). Biosearch contends that all of the defendants in this litigation could

have been sued in the Northern District of California, and plaintiffs have conceded this issue.[1] Therefore, the court finds that venue is proper as to all defendants.

**2. Private Interest Factors**

*a. Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first "private" interest factor to consider. The defendants contend that the vast majority of physical evidence relevant to the case resides with defendant Biosearch at its principal place of business in the Northern District of California. Furthermore, defendants allege that plaintiff Applied Biosystems' sources of proof are located at its headquarters in the Northern District of California and that, therefore, it is reasonable to expect that all of its pertinent evidence will be located there as well.

In response, plaintiffs argue that defendants' narrow focus on the ease of access to only Biosearch's evidence fails to account for the relative ease of access to relevant sources of proof residing with the other parties. According to plaintiffs, the relevant evidence in this case is scattered throughout the country, including the following evidence in the following locations: (1) defendant Bio-Synthesis' evidence, which is located in Lewisville, Texas; (2) defendant Midland Certified's evidence, which is located in Midland, Texas; (3) defendant Eurofins' evidence, which is located in Alabama; and (4) plaintiff Life Technologies' evidence, which is located at its various facilities in California, Texas, Maryland, and New York. Thus, plaintiffs argue that the Eastern District of

---

[1] In their response, plaintiffs initially argued that defendants failed to demonstrate that defendants Bio-Synthesis and Midland Certified could have been sued in the Northern District of California. In reply, defendants argued that defendants Bio-Synthesis and Midland Certified could be sued in the Northen District of California because they have sufficient contacts with the transferee district, including product sales and other activities in the district. Plaintiffs did not subsequently contradict defendants' assertion in their sur-reply. As such, the court takes plaintiffs' silence as an admission that defendants Bio-Synthesis and Midland Certified could have been sued in the Northern District of California.

Texas, as compared to the Northern District of California, is more centrally located and convenient for all parties involved.

In *Nintendo*, the Federal Circuit rejected the centralized location argument in situations where none of the physical evidence pertinent to the case is located in the Eastern District of Texas. *Nintendo*, 589 F.3d at 1199. This case, however, is distinguishable from the situation presented in *Nintendo* because all of defendant Bio-Synthesis' evidence is located in the Eastern District of Texas, and a significant amount of other relevant evidence is located within the state of Texas. Under the present facts it is proper and, indeed, necessary for the court to consider its centralized location in analysis of the § 1404(a) factors. *See id*.; *Genetech*, 566 F.3d at 1344; *United States v. Binder*, 794 F.2d 1195, 1200 (7th Cir. 1986). Given that a considerable amount of the evidence relevant to this case is located in Texas (much of it in the Eastern District of Texas) and that the rest of the evidence is scattered throughout the country, a central location like Texas rather than a far western state like California is more convenient for all parties involved. *See Binder*, 794 F.2d at 1200. Therefore, the ease of access to sources of proof weighs against transfer.

### b. *Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.* The defendants have identified nineteen non-party witnesses subject to compulsory process in the Northern District of California. Yet neither party has identified any witnesses subject to compulsory process in the Marshall Division of the Eastern District of Texas. Plaintiffs argue that, since non-party witnesses are

scattered throughout the country, neither forum has "absolute" subpoena power, and therefore, this factor is neutral. The Federal Circuit, however, has made it clear that "absolute" subpoena power does not require that all relevant non-party witnesses reside within the subpoena power of the court. *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). Rather, "absolute" subpoena power requires merely that the court have the power to subpoena non-party witnesses for both depositions and trials. *Id.* at 1338. Moreover, the law is clear that when more non-party witnesses reside within the transferee venue, the compulsory process factor weighs more heavily in favor of transfer. Therefore, this factor weighs in favor of transfer.

### c.    Cost of Attendance for Willing Witnesses

Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of California. The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205. The court must consider the convenience of both the party and non-party witnesses. *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

The issues here are similar to those discussed in the ease of access to sources of proof factor. Most of defendant Biosearch's employees are located in the Northern District of California, and the defendants have identified nineteen potential non-party witnesses that reside in or near the proposed transferee district. However, defendants again narrowly focus their analysis on the cost of attendance for defendant Biosearch's employees and a few various other witnesses, while they ignore the relative cost of attendance for all other party and non-party witnesses. For instance, the

following witnesses would have to increase their travel by the following amounts if the case were transferred to the Northern District of California: (1) defendant Eurofins, located in Huntsville, Alabama - 1,526.9 miles; (2) defendant Bio-Synthesis, located in Lewisville, Texas - 1,309.9 miles; (3) defendant Midland Certified, located in Midland, Texas - 766.2 miles; (4) plaintiff Life Technologies, located in Austin, Texas - 1248.4 miles; (5) plaintiff Life Technologies, located in Frederick, Maryland - 1354.3 miles; (6) plaintiff Life Technologies, located in Grand Island, New York - 1,187 miles. Furthermore, as discussed above, it is appropriate for the court to consider its centralized location in weighing this factor because defendant Bio-Synthesis has its principal place of business in the Eastern District of Texas, and therefore, numerous witnesses will undoubtedly be residents of the Eastern District of Texas. *See Genetech*, 566 F.3d at 1344; *Binder*, 794 F.2d at 1200. As such, the widely scattered residences of potential witnesses in this case favors a central location for trial like the Eastern District of Texas, and in all, this factor weighs heavily against transfer.

### d. Other Practical Problems

Practical problems include issues of judicial economy. *Volkswagen III*, 566 F.3d at 1351. The Federal Circuit has held that the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). However, this case is in its infancy, and no practical problems exist that should deter transfer to the Northern District of California. As such, this factor is neutral.

### 3.     Public Interest Factors

#### a.     Court Congestion

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* The plaintiffs contend that transfer of the case to the Northern District of California would increase the time to trial by sixty-two percent, and the defendants do not dispute this figure. In all, however, given the speculative nature of this factor, the court finds it is neutral.

#### b.     Local Interest

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

The defendants argue that the Northern District of California has a strong local interest in resolving this case because two of the parties (Biosearch and Applied Biosystems) are headquartered in the Northern District of California. Defendants further argue that there is no relevant connection between this case and the Eastern District of Texas, except that Biosearch has sold the alleged infringing products in this venue. Defendants, however, dismiss defendant Bio-Synthesis' activities within the Eastern District of Texas. With approximately thirty-five workers and $4 million in annual revenue, Bio-Synthesis' activities in the Eastern District of Texas create a significant

connection between this case and this district. However, considering that defendant Biosearch is headquartered in the Northern District of California and therefore, the transferee district has a similarly strong local interest in this dispute, this factor is neutral.

*c.     Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

*d.     Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

**4.     § 1404(a) Transfer Conclusion**

Considering all of the "private" and "public" interest factors, the defendants have not met their burden of showing that the Northern District of California is "clearly more convenient" than the Eastern District of Texas. While the availability of compulsory process weighs heavily in favor of transfer, all of the other factors either weigh against transfer or are neutral.

**B.     Severance**

As mentioned above, severance is not permitted when it would cause the same issues to be re-litigated in two places because the defendant over whom jurisdiction is retained is integrally involved in the controversy. *See Volkswagen III*, 566 F.3d at 1351; *Balthasar*, 654 F. Supp. 2d at 549. Defendants contend that defendants Bio-Synthesis and Midland Certified are not so involved in this controversy as to warrant keeping the entire case in the Eastern District of Texas. In response, plaintiffs argue that severance of this case would create two cases with similar issues because defendants Bio-Synthesis and Midland Certified are not merely peripheral parties. Rather, according

to plaintiffs, issues concerning enforceability, validity, and infringement are shared by all of the defendants in this case. Considering both parties' arguments, the court finds that defendants Bio-Synthesis and Midland Certified are not peripheral parties and that severance would result in exactly the "waste[] of time, energy and money that § 1404(a) was designed to prevent." *Volkswagen III*, 566 F.3d at 1351 (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). Therefore, severance of defendants' claims is improper.

**V.     Conclusion**

Defendants' motion to transfer venue, or, alternatively, to sever is DENIED.

SIGNED this 30th day of September, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE