**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., EUROFINS MWG OPERON INC., and THE MIDLAND CERTIFIED REAGENT COMPANY, INC.,**<br><br>**Defendants.** | **CIVIL ACTION NO. 2:09-CV-00283 TJW-CE** |

**DEFENDANTS BIOSEARCH TECHNOLOGIES, INC. AND EUROFINS MWG OPERON INC.'S OBJECTIONS TO AND MOTION TO RECONSIDER THE SEPTEMBER 30, 2010 ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

I.  **INTRODUCTION.**

On September 30, 2010, Magistrate Judge Everingham issued an Order (the "Order," Dkt. No. 120) denying Defendants Biosearch Technologies, Inc. and Eurofins MWG Operon Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion," Dkt. No. 27). Because the Order does not balance two of the factors relevant to venue transfer appropriately in light of the undisputed facts, Defendants Biosearch Technologies, Inc. ("Biosearch") and Eurofins MWG Operon Inc. ("Eurofins," together, "Biosearch/Eurofins") submit these objections and move this Court to reconsider the Order pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and L.R. 4, Exhibit B. For the reasons set forth herein, Biosearch/Eurofins respectfully request that this Court sustain Biosearch/Eurofins' objections, reconsider the Order, grant Biosearch/Eurofins' Motion, and transfer this action to the Northern District of California ("NDCA").

Specifically, the Order fails to recognize that any purported ties between this case and the Eastern District of Texas are nothing more than *sheer artifice* constructed by Plaintiffs. This is plainly demonstrated by the following undisputed facts:

- Neither of the two Texas-based defendants, Bio-synthesis, Inc. ("Bio-Synthesis") nor Midland Certified Reagent Co., Inc. ("Midland"), were parties to the original complaint. *See generally* Dkt. No. 1 (Complaint).

- Midland has since been dismissed from this case and therefore should be disregarded. *See* Dkt. No. 94 (Stipulated Order of Dismissal)

- After filing its Answer on January 14, Bio-Synthesis has received extensions from Plaintiffs on three separate occasions to avoid submitting invalidity contentions (*see* Dkt. Nos. 105, 107, 117) and has received two extensions enabling it not to exchange its initial disclosures (*see* Dkt. Nos. 113, 121). In effect, Bio-Synthesis has not participated in this litigation other than to procure extensions from Plaintiffs.

Biosearch/Eurofins respectfully requests that this Court reconsider the Order in light of these

undisputed facts and transfer this action to the NDCA.

Alternatively, Biosearch/Eurofins respectfully request that this Court sever the claims against the two *active* defendants (*i.e.*, Biosearch and Eurofins) from those against the one *inactive* defendant (Bio-Synthesis), so that Bio-Synthesis is no longer permitted to drag out this litigation with its incessant extensions, at the expense of the remaining defendants. Permitting Bio-Synthesis to unilaterally bog down the entire case schedule is the *antithesis* of judicial economy.

## II.  SUMMARY OF THE ARGUMENT.

As properly explained in the Order:

> [T]he Fifth Circuit considers several 'private' and 'public' interest factors, none of which are given dispositive weight. [citation omitted]. The 'private' interest factors include: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' [citation omitted]. The 'public' interest factors include '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.' [citation omitted].

Order at 3. The Order finds that two factors weigh against transfer (Private Factor Nos. 1, 3), one factor weighs in favor of transfer (Private Factor No. 2), four factors are neutral (Private Factor No. 4, Public Factors Nos. 1-3), and one factor is inapplicable (Public Factor No. 4). *See generally*, Order at 6-11.

In finding that two of the eight factors weigh against transfer, the Order erroneously relies on the activities of defendants Bio-synthesis and Midland – the former of whom is refusing to participate in this litigation, and the latter of whom already has been dismissed from the case. Taking these facts into consideration, these two factors weigh in favor of transfer, and the Order

should be reconsidered appropriately.

### III. THE ORDER IS ERRONEOUS BECAUSE BIO-SYNTHESIS, INC. IS DEMONSTRATIVELY AN INACTIVE PARTICIPANT IN THIS LITIGATION.

The crux of the Order revolves around the activities of defendant Bio-Synthesis, a demonstratively inactive participant in this litigation. Specifically, the Order fails to take into consideration Bio-Search's litigation conduct (or lack thereof) during the period after which briefing on the Motion was completed (March 29, 2010) through the time when the Court issued its Order (September 30, 2010). During this time period, two major case deadlines have occurred: (1) defendants' mandatory compliance with P.R. 3-3 and 3-4 by service of their invalidity contentions and accompanying document production, and (2) the parties' mandatory compliance with Fed. R. Civ. P. 26(a)(1) by exchange of their initial disclosures and disclosures pursuant to Paragraphs 1 and 3C of the Joint Agreed Discovery Order. *See* Dkt. No. 84 (Docket Control Order) at 4. Despite the fact that these deadlines have long since passed, Bio-Synthesis still has not served its invalidity contentions or its initial disclosures.

This Court ordered defendants to serve invalidity contentions on July 22, 2010. *See* Dkt. No. 84 (Docket Control Order) at 4. On July 21, 2010, Biosearch/Eurofins' attorneys received a call from Life Tech's attorneys, wherein Life Tech's attorneys explained that it had granted Bio-Synthesis' request for a thirty-day extension to serve its invalidity contentions, and asked whether Biosearch/Eurofins wanted to delay their exchange as well. Decl. of Ahren C. Hsu-Hoffman in Supp. of Objections ("Hoffman Decl.") ¶ 2, Ex. 1. Biosearch/Eurofins reluctantly agreed to join in the request so as not to be the only parties serving their contentions. *Id*. At the parties' request, the Court granted the defendants a thirty-day extension to serve invalidity contentions. *See* Dkt. 105 (Motion for Extension), Dkt. No. 106 (Order granting extension to August 23, 2010).

Bio-Synthesis then asked for a <u>second</u> thirty-day extension from Life Tech, which Life Tech apparently approved – though this time, Life Tech failed to notify Biosearch/Eurofins' of this extension in advance.  Hoffman Decl. ¶ 3.  Biosearch/Eurofins only learned of the "unopposed" extension request by receiving the ECF Notification that Bio-Synthesis had filed an "unopposed" motion for an extension.  *Id.*; *see* Dkt. Nos. 107 (Unopposed Motion for Extension).  Biosearch/Eurofins went forward with the invalidity contention exchange, and the Court granted Bio-Synthesis a second thirty-day extension to serve invalidity contentions.  Dkt. Nos. 108-109 (Biosearch/Eurofins' Notices of Compliance with P.R. 3-3 and 3-4), 110 (Order granting extension to September 27, 2010).

Not surprisingly, on September 27, 2010, Bio-Synthesis filed a <u>third</u> "unopposed" motion for an extension to serve its invalidity contentions, which the Court again granted.  *See* Dkt. Nos. 117 (Motion for Extension), 119 (Order granting extension to October 27, 2010).  It is indisputable that invalidity contentions are quintessential to a patent infringement case, and it is equally indisputable that Bio-Synthesis, the sham defendant in this action, is refusing to participate in this case event.

As with the invalidity contentions, Bio-Synthesis has also refused to participate in the exchange of initial disclosures, which were due on September 15, 2010.  *See* Dkt. No. 84 (Docket Control Order) at 4.  While Biosearch, Eurofins, ABI, and Life Tech all exchanged their initial disclosures on that date, Bio-Synthesis predictably filed a Motion for Extension of Time to serve its initial disclosures, which the Court granted.  *See*. Dkt. Nos. 113 (Motion for Extension), Dkt. No. 115 (Order granted extension to October 15, 2010).  And again, not surprisingly, Bio-Synthesis filed a <u>second</u> Motion for Extension of Time to serve its initial disclosures just yesterday.  *See* Dkt. No. 121 (motion requesting extension to November 15, 2010).  By refusing to timely exchange its initial disclosures, Bio-Synthesis has stymied Biosearch/Eurofins' ability to conduct, among other things, deposition discovery of Bio-Synthesis' key witnesses because

Bio-Synthesis has not exchanged its list of potential witnesses. *See* Fed. R. Civ. P. 26(a)(1)(A)(i).

The mere fact that "Bio-Synthesis has engaged counsel" (Order at 5) does not mean that Bio-Synthesis is actually participating in this litigation. On the face of the docket alone, it is clear that Bio-Synthesis is merely "buying time" to establish venue until the Court enters its final Order regarding Biosearch/Eurofins' Motion – after which Bio-Synthesis will presumably be dismissed. It would be patently unfair to force the only *active* participants (none of whom have any relationship to this district) to remain in the Eastern District of Texas, based on the purported connections of an inactive defendant.

### IV. THE ORDER IS ERRONEOUS BECAUSE IT ASSESSES THE EQUITIES WITH RESPECT TO THE MIDLAND CERTIFIED REAGENT COMPANY, INC., WHO IS NO LONGER A PARTY TO THIS LAWSUIT.

The Order mistakenly relies on the activities of former defendant Midland Certified Reagent Co., Inc. ("Midland") in assessing whether venue is proper, despite the fact that Midland was dismissed from this case in June 2010. *See* Dkt. Nos. 91 (Joint Motion for Entry of Stipulated Order of Dismissal), 94 (Stipulated Order of Dismissal). Again, of the eight factors to be considered by the Court, the Order only finds two weighing against transfer: (a) the relative ease of access to sources of proof, and (b) the cost of attendance for willing witnesses. *See* Order at 7, 9.

First, in finding that the private interest factor "relative ease of access to sources of proof" weighs against transfer, the Order improperly relies on the fact that "defendant Midland Certified's evidence . . . is located in Midland, Texas . . . ." Order at 6; *see also* Order at 7 (stating that "a significant amount of other relevant evidence is located within the state of Texas"). Because Midland is no longer a party to this action, the location of sources of its proof should not have been considered in assessing this private interest factor.

Second, in finding that the private interest factor "the cost of attendance for willing witnesses" weighs against transfer, the Order states that "witnesses would have to increase their

travel by the following amounts if the case were transferred to the Northern District of California . . . (3) defendant Midland Certified, located in Midland, Texas – 766.2 miles . . . ." Order at 9. Again, because Midland is no longer a party to this litigation, the Court should not have taken the cost of attendance for Midland's willing witnesses into consideration. *See generally*, Dkt. No. 94 (Dismissal of Midland).

**V.    CONCLUSION**

For all of the foregoing reasons, this Court should reconsider the Order, sustain this objection, grant Biosearch/Eurofins' Motion, and transfer this action to the Northern District of California. As demonstrated by the following chart, the private and public factors weigh in favor of transferring this action:

| Factor | Pro-Transfer | Anti-Transfer | Neutral |
|---|---|---|---|
| The relative ease of access to sources of proof | X | | |
| The availability of compulsory process to secure the attendance of witnesses | X | | |
| The cost of attendance for willing witnesses | X | | |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | X | | |
| The administrative difficulties flowing from court congestion | | | X |
| The local interest in having localized interests decided at home | X | | |
| The familiarity of the forum with the law that will govern the case | | | X |
| The avoidance of unnecessary problems of conflict of laws in the application of foreign law | | | X |

Dated: October 14, 2010

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

 */s/ Daniel Johnson, Jr.*
Winstol D. Carter, Jr. (TX Bar No. 03932950)
Email: wcarter@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Daniel Johnson, Jr. (admitted Pro Hac Vice)
Email: djjohnson@morganlewis.com
Ahren C. Hsu-Hoffman (TX Bar No. 24053269)
Email: ahoffman@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

*Attorneys for Defendants Biosearch Technologies, Inc. and Eurofins MWG Operon Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's Case Management/Electronic Case Filing and/or electronic mail on October 14, 2010.

                                            /s/ Daniel Johnson, Jr.
                                            Daniel Johnson, Jr.